# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NAWAR OMEIRI,

      Plaintiff,

CASE NO. 07-11757
HON. LAWRENCE P. ZATKOFF

v.

DISTRICT DIRECTOR, BUREAU OF
CITIZENSHIP AND IMMIGRATION
SERVICES,

      Defendant.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 24, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss or in the Alternative to Remand (Docket #5). Defendant filed the current motion on June 25, 2007, and Plaintiff responded on July 13, 2007. Defendant has since replied. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's motion will be GRANTED in part.

### II. BACKGROUND

This case arises from Plaintiff's application for naturalization with the United States

Citizenship and Immigration Services (Defendant or CIS). Plaintiff is a citizen of Lebanon and resident of Dearborn, Michigan. *See* Pl.'s Compl. ¶ 4. Plaintiff entered the country on October 17, 1997, pursuant to an F-1 Student Visa and has since adjusted his status to that of a Lawful Permanent Resident based on his marriage to a United States Citizen. *Id.* Plaintiff filed his application for naturalization (Form N-400) on March 8, 2005. *See id.* On March 17, 2005, Defendant submitted Plaintiff's name to the FBI for mandatory a security check. *Id.* ¶ 8. Defendant then interviewed Plaintiff on August 4, 2005, and denied his application on September 30, 2005. *Id.*

Following this denial, Plaintiff filed a Request for Hearing on Decision (Form N-336) on October 20, 2005. *Id.* After Plaintiff's N-336 review hearing on September 26, 2006, Defendant informed Plaintiff that he passed the tests for English and United States history and government, but that Defendant could not make a final decision on his N-400 because his FBI security checks were still pending. *Id.* To date, Plaintiff's FBI security check has not been completed.

Plaintiff filed the current suit on April 20, 2007, seeking an order compelling Defendant to make a decision on his application for naturalization. Defendant has since filed a motion to dismiss under FED. R. CIV. P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction over Plaintiff's claim.

### III. LEGAL STANDARD

A motion challenging the basis for the Court's subject matter jurisdiction is brought under FED. R. CIV. P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1) ... the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). A Rule 12(b)(1) motion to dismiss will be grated only if, taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

# IV. ANALYSIS

Defendant challenges the Court's subject matter jurisdiction in this case based on its interpretation of 8 U.S.C. § 1447(b), which provides the Court with jurisdiction over Plaintiff's application for naturalization if it has been pending for over 120 days after his examination has been conducted. The statute provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). Defendant contends that "the examination" mentioned in § 1447(b) does not refer to its initial interview with Plaintiff, but the date on which it has compiled all of the information necessary to make a decision on Plaintiff's naturalization application. Since Defendant does not have the results of Plaintiff's background check, Defendant asserts that its "examination" is not complete, thus depriving the Court of jurisdiction over this matter. In contrast, Plaintiff argues that "the examination" refers to the initial interview of an applicant for naturalization.

The issue before the Court is whether "the examination" referenced in § 1447(b) means the date Defendant conducted its initial interview of Plaintiff or when Defendant has completed all steps necessary to make a decision on Plaintiff's application, including receiving a definitive response from the FBI on Plaintiff's background check. There is a split of authority among district courts who have confronted this issue and only one court of appeals has addressed it directly. The vast majority of courts, including every court in this district, have concluded that "the examination" refers to Defendant's interview of Plaintiff. *See, e.g., United States v. Hovsepian*, 359 F.3d 1144, 1159-64 (9th Cir. 2004) (en banc); *Khelifa v. Chertoff*, 433 F. Supp. 2d 836 (E.D. Mich. 2006); *Zhang v.*

*Chertoff*, 2006 WL 4045600 (E.D. Mich. 2006); *Al Saidi v. Jenifer*, 2005 WL 5179147 (E.D. Mich. 2005). In contrast, Defendant relies on the Fifth Circuit's recent decision in *Walji v. Gonzales*, __ F.3d __, 2007 WL 1747911 (5th Cir. 2007) (holding that "when the CIS examination is premature because the mandatory security investigation is not complete, the 120-day time period of 8 U.S.C. § 1447(b) does not begin to run until CIS receives the FBI's 'definitive response,' described in 8 C.F.R. § 335.2(b)").

The Court agrees with the majority of courts which have found "the examination" to mean Plaintiff's interview, and concludes that it has jurisdiction pursuant to 8 U.S.C. § 1447(b). Section 1447(b) explicitly refers to the examination pursuant to § 1446. Section 1446 in turn expressly separates Defendant's examination of Plaintiff from Defendant's investigation of Plaintiff. *Compare* 8 U.S.C. § 1446(a) (requiring an investigation of the applicant encompassing the five years preceding his application) *with* 8 U.S.C. § 1446(b) (requiring an examination of the applicant that may concern any matters affecting the application). Moreover, the plain language of § 1447(b) conferring jurisdiction 120 days "after the date on which the examination is conducted" indicates that "the examination" occurs on a discrete date. Finally, Defendant's regulations implementing § 1446 clearly recognize the distinction between the investigatory process as a whole and "the examination" as a discrete event. *See* 8 C.F.R. § 335.2(b) (requiring a "definitive response" from the FBI that a background check has been completed before the initial examination on the application can be held); 8 C.F.R. § 335.3 (stating "[a] decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2"); 8 C.F.R. § 335.6(a) (stating "[a]n applicant for naturalization shall be deemed to have abandoned his or her application if he or she fails to appear for the examination"). Thus, the Court finds that "the examination" referred to in §

1447(b) is not the same as Defendant's entire investigative process but instead references the initial interview held between Plaintiff and Defendant. Accordingly, the Court has subject matter jurisdiction in this case.

Further, the Court declines to follow the reasoning in *Walji*. First, the Court disagrees with *Walji's* assertion that a background check must necessarily precede an initial examination. The background check requirement states: "none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed." Department of Justice Appropriations Act of 1998 (the Act), Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448 *reprinted in* historical and statutory notes to 8 U.S.C.A. § 1446(a). Based on its reading of the Act, the Court finds that Congress merely meant to prevent a final decision on a naturalization application where there was no confirmation from the FBI that a full background check had occurred; it did not preclude conducting an initial examination before a background check had been completed. In other words, the Court finds that Congress did not mandate any specific order of the processes involved in adjudicating naturalization application other than requiring that a background check be completed before a final decision on the application.

Second *Walji's* conclusion that the 120-day time period of 8 U.S.C. § 1447(b) does not begin to run until Defendant receives the FBI's definitive response where Defendant conducts an examination of a naturalization applicant before the background check is complete does not necessarily follow from the premise that a final decision on a naturalization application cannot occur before a background check has been completed. The purpose of the background checks within the context of the Immigration and Naturalization Act is to ensure that only worthy applicants are

granted the privilege of United States citizenship. As a means of effectuating this purpose, Congress required Defendant to receive confirmation from the FBI that a criminal background check has been completed prior to making a final decision on a naturalization application. This requirement provides some assurance that Defendant's final decisions are well informed and carefully considered.

On the other hand, the purpose of granting jurisdiction to the district courts 120 days after the initial interview with an applicant for naturalization is to ensure that Defendant does not unreasonably delay its decision. Thus, once Defendant conducts its initial interview with the applicant, it has 120 days in which to complete any investigation it deems necessary in order to make a final decision. Tellingly, Congress did not qualify the grant of jurisdiction other than delaying it by 120 days: if, for any reason, including the absence of a complete criminal background check, Defendant has not made a decision at the end of 120 days, the district courts can assume jurisdiction. This gives the district courts authority to oversee the application process, including gathering information necessary to make a final decision and making sure the steps Defendant takes are necessary for the final adjudication of the application, and subjects Defendant to the court's power over contempt.

The Court finds nothing incompatible in these two objectives. Conferring jurisdiction on the district courts does not detract from Congress's goal of making sure that Defendant's decisions are well informed and carefully considered. The 120 day period provides an incentive for Defendant to process its applications efficiently. However, nowhere does the 120-day provision require Defendant to act imprudently. In other words, while the 120-day period encourages Defendant to make final decisions in a timely manner, it does not mandate that Defendant make a final decision where it does not possess the necessary information. Likewise, the courts are not required to make a final decision simply upon gaining jurisdiction. The jurisdictional grant merely provides necessary oversight to

a complicated process; it does not necessarily hasten it. Accordingly, the courts have the authority to defer the decision making authority to Defendant through their power to remand the application and instruct Defendant, while still maintaining supervision over the timeliness of the application process. As such, informed decisions are still made, but applicants have some assurance that the decisions cannot be unreasonably delayed without the court stepping in. This interpretation gives effect to both of Congress's objectives.

A contrary interpretation, such as in *Walji*, effectively strips the courts of this important oversight responsibility. If "the examination" were truly a process that could not be "conducted" until Defendant had obtained all information that, in its sole discretion, it deemed necessary to make a final decision, it could delay the tolling of the 120-day jurisdictional period indefinitely by simply asserting its authority to gather further information, request supplemental background checks, or conduct re-examinations. The Court finds that Congress did not intend to allow Defendant to avoid the courts' oversight authority in such a way or by hiding behind the backup at the FBI.

## V. CONCLUSION

Based on the foregoing analysis, IT IS ORDERED that Defendant's Motion to Dismiss or in the Alternative to Remand is GRANTED IN PART.

IT IS FURTHER ORDERED that this case is REMANDED to the United States Citizenship and Immigration Services for a prompt resolution following completion of the mandatory background check.

IT IS SO ORDERED.

                                                  s/Lawrence P. Zatkoff
                                                  LAWRENCE P. ZATKOFF
                                                  UNITED STATES DISTRICT JUDGE

Dated: July 24, 2007

CERTIFICATE OF SERVICE

       The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 24, 2007.

                                         s/Marie E. Verlinde
                                         Case Manager
                                         (810) 984-3290